1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT
9             SOUTHERN DISTRICT OF CALIFORNIA
10
11   STEVEN MARCOTTE,          )  Civil No. 12-CV-1838-AJB
                               )  (WVG)
12              Plaintiff,     )
                               )  AMENDED REPORT AND
13   v.                        )  RECOMMENDATION:
                               )  DENYING PLAINTIFF'S
14   CAROLYN W. COLVIN,        )  MOTION FOR SUMMARY
     Commissioner of Social    )  JUDGMENT
15   Security,                 )  (Doc. 13)
                               )
16              Defendant.     )  GRANTING DEFENDANT'S
                               )  MOTION FOR SUMMARY
17   _____ )  JUDGMENT (Doc. 15)
18
19
20                            I
21                      INTRODUCTION
22        Plaintiff Steven Marcotte ("Plaintiff") has filed a
23   Complaint for Judicial Review and Remedy On Administrative
24   Decision under the Social Security Act ("Act"). 42 U.S.C.
25   405(g). Defendant Carolyn W. Colvin ("Defendant"), has
26   filed an Answer to the Complaint and the Administrative
27   Record ("Tr."), pertaining to this case. Plaintiff filed
28   a Motion for Summary Judgment. Defendant also filed an

                              1                      12cv1838

1  Opposition to Plaintiff's Motion for Summary Judgment and
2  a Cross-Motion for Summary Judgment.

3       The Court, having reviewed Plaintiff's Motion for
4  Summary Judgment, Defendant's Opposition to Plaintiff's
5  Motion for Summary Judgment, Defendant's Cross Motion for
6  Summary Judgment, and the Administrative Record filed by
7  Defendant, hereby recommends that Plaintiff's Motion for
8  Summary Judgment be DENIED, and Defendant's Cross Motion
9  for Summary Judgment be GRANTED.

10                              II

11                    STATEMENT OF FACTS

12       Plaintiff was born on July 21, 1957. Plaintiff
13  received a high school education (Tr. 160) and last worked
14  as an airport security screener (Tr. 193, 451). Plaintiff
15  applied for Disability Insurance Benefits on December 2,
16  2008. He alleged that he became unable to work on November
17  2, 2007.

18       In Plaintiff's application for Disability Insurance
19  Benefits, he alleged that he was unable to work because of
20  weakness, fatigue, shortness of breath, joint and chest
21  pain, back and hip pain, two herniated discs, mental
22  confusion and an inability to concentrate. (Tr. 89-90).

23       The ALJ, applying the five step sequential analysis
24  in 20 C.F.R. § 416.920, found Plaintiff was not disabled
25  in accordance with section 1614(a)(3)(A) of the Social
26  Security Act. The ALJ did find that the Plaintiff's
27  residual functional capacity ("RFC") included the ability
28  to perform light work as defined in 20 C.F.R. §

12cv1838

404.1567(b), except with the ability to occasionally climb, balance, stoop, crouch, kneel, or crawl. The ALJ also found that Plaintiff must avoid exposure to wetness and humidity, but can tolerate moderate exposure to hazards, and avoid all exposure to fumes, odors, dust, and gases (Tr. 19).

Plaintiff argues that the ALJ erred in discrediting Plaintiff's treating physician, Dr. Nielsen, and not finding him disabled. Dr. Nielsen determined that Plaintiff could lift 10 pounds occasionally and five pounds frequently; stand for thirty minutes at one time; sit for two hours at one time; not tolerate dust, smoke, and fumes; and could work for 2 hours per day (Tr. 25).

However, the ALJ discredited Dr. Nielsen because the ALJ found that Dr. Nielsen's opinion was unsupported by objective medical evidence and primarily based on Plaintiff's subjective complaints. Thus, the ALJ found that the Plaintiff had the RFC to do light work and denied Plaintiff Disability Insurance Benefits.

## III

### PROCEDURAL HISTORY

On December 2, 2008, Plaintiff applied for Disability Benefits and alleged that he became unable to work on November 2, 2007. The Commissioner of Social Security denied his application initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On December 17, 2010, Plaintiff and his attorney appeared at a hearing before an

ALJ. On January 4, 2011, the ALJ found that Plaintiff was not entitled to Disability Benefits because he could perform jobs that existed in significant numbers in the national economy. Plaintiff requested review by the Appeals Council. The Appeals Council denied his request on April 26, 2012. The ALJ's decision then became the Commissioner's final decision.

IV

ALJ'S FINDINGS

The ALJ made the following pertinent findings:

1. [Plaintiff] last met the insured status requirement of the Social Security Act on December 31, 2009.

2. [Plaintiff] did not engage in substantial gainful activity during the period of his alleged onset date of November 2, 2007 through his date last insured of December 31, 2009 (20 C.F.R. 404.1572 *et seq.*).

3. Through the date last insured, [Plaintiff] had the following severe impairments: degenerative disease of the lumbar spine, arthritis of the left knee, asthmatic bronchitis, and obstructive sleep apnea (20 C.F.R. 404.15209(c)).

* * * * * * * *

The record established that [Plaintiff] had asthma with wheezing and decreased air movement in the lungs, with complaints of shortness of breath (Exhibit 1F/61-52, 2F/25-26; 5F/12; 6F; 18F/10; 19F).

* * * * * * * *

[Plaintiff]'s pulmonary test completed on May 14, 2008 revealed findings consistent with mild obstructive airflow limitation principally involving the small airways and evidence of post bronchodilator reversibility.

* * * * * * * *

4

Because these are medically determinable impairments that have lasted more than 12 months and cause more than a slight limitation of [Plaintiff]'s physical or mental ability to do basic work activities, the Administrative Law Judge finds at step two of the sequential disability analysis that [Plaintiff]'s impairments are "severe" as defined by the Regulations.

The undersigned took into consideration all of the [Plaintiff]'s other diagnosed conditions, including gastroesophageal reflux disease, bilateral tinnitus, and finds that there is minimal clinical evidence to corroborate or support any finding of significant impact related to them. The record is insufficient to establish severe physical impairments related to them.

[Plaintiff] does not have a medically determinable mental impairment that causes more than minimal limitation in [Plaintiff]'s ability to perform basic mental work activities and is therefore non-severe. The record contains no evidence of prior or current mental health treatment or psychiatric hospitalization, and the medical evidence of record fully supports a finding of non-severe mental impairment.

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. 404, Subpart. P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

* * * * * * * *

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except with the ability to occasionally climb, balance, stoop, crouch, kneel, or crawl. [Plaintiff] must avoid concentrated exposure to wetness and humidity and moderate exposure to hazards, and avoid all exposure to fumes, odors, dust, and gases.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements

12cv1838

of 20 C.F.R. 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

* * * * * * * *

After careful consideration of the evidence, the undersigned finds that the [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of [Plaintiff]'s alleged inability to do work due to degenerative disc disease of the lumbar spine, arthritis of the left knee, asthmatic bronchitis, and obstructive sleep apnea, the record does not contain evidence which shows that [Plaintiff] is functionally unable to work.

The objective medical evidence is fully consistent with the above residual functional capacity and is inconsistent with the allegations of disabling levels of pain. Physical examinations were generally unremarkable with few abnormal findings. On October 13, 2007, Vail Valley Medical Center reported the [Plaintiff] had vital signs within normal limits; and normal HEENT[1], neck, cardiovascular, abdomen, extremities, and neurological examinations.

The weight of objective evidence does not support the claim's of [Plaintiff]'s disabling limitations to the degree alleged. Records from the Cassidy Medical Group, dated January 2, 2008 through April 25, 2008, indicate that the [Plaintiff]'s back examinations were unremarkable with no gross deformities, no tenderness to palpation, and findings within normal limits in sensory, motor, and reflex examinations.

During the period of adjudication, the treating doctor's clinical findings were quite minimal

---

[1] HEENT stands for the head, ears, eyes, nose, and throat portion of the doctor's examination.

12cv1838

and not at a level considered to be disabling. On April 14, 2008, Frank Nolan, M.D., reported [Plaintiff] had lungs clear of auscultation[2] with no rales, rhonchi, or wheezes; heart rate and rhythm, with no murmurs or rubs; mild tenderness of the lumbar spine, and normal heel and toe walking. On June 23, 2008 Dr. Nolan reported [Plaintiff] was pleasant and in no distress and had vital signs within normal limits; lungs clear to auscultation with no rales, rhonchi, or wheezes; normal heart rate and rhythm, with no murmurs or rubs; normal heel and toe walking; mild pain with low back pain lumbar percussion, with reduced forward flexion; straight leg raising testing borderline on the left.

On April 21, 2008, Martin M. Nielsen, M.D., [Plaintiff]'s treating physician, reported the [Plaintiff] had vital signs within normal limits; and normal HEENT, neck cardiovascular, abdomen, and neurological examinations.

Subsequent reports during the period of adjudication did not reveal significant changes in the [Plaintiff]'s overall condition.

* * * * * * *

Additional reports from [Plaintiff]'s treating doctor were generally unremarkable with no significant objective findings to support a more restrictive residual functional capacity. Dr. Nielsen reported on January 13, 2009 that [Plaintiff] was seen for complaints related to asthma. Examination however revealed [Plaintiff]'s chest was clear and had "good eye contact; exchange!".

Other examinations completed by Dr. Nielsen were unremarkable with reported wheezing but generally clear exchange.

Reporting from a state consultative examiner indicated an unremarkable examination with no significant objective findings to support a more restrictive residual functional capacity.

* * * * * * *

The [Plaintiff] was examined by various medical facilities which did not find significant abnormalities during examination.

---

[2] Sounds arising from the organs, usually the lungs.

*******

Additional medical evidence of record showed unremarkable physical examinations that do not support a disabling impairment.

Diagnostic findings were unremarkable and did not show any significant pulmonary or other medical condition to support the [Plaintiff]'s claim of disabling symptoms. On October 13, 2007, the [Plaintiff] underwent chest x-rays due to reported shortness of breath. The study revealed the lungs were aerated and free of infiltrates or nodules. Other findings were within normal limits. An electrocardiogram (EKG) performed on October 13, 2007 was reported to be normal. On October 25, 2007, the [Plaintiff] had myocardial stress test or exercise treadmill test due to reported chest pain. The findings were reported to be normal with nothing to suggest stress-induced ischemia[3]/ with exercise. There was no clinical angina[4]/ reported.

*******

Subsequent diagnostic studies were also unremarkable. Chest x-rays completed on October 28, 2008 due to post bronchoscopy was negative with findings of stable heart size; stable vascular findings; clear lung parenchyma[5]/; and no pleural effusion. On August 1, 2009, Tri-City Medical Center reported that [Plaintiff] was seen for reported crushing anterior chest discomfort and dyspnea (shortness of breath). Chest x-rays however showed a right middle lobe pneumonia and labs were generally normal with normal white blood pressure reading of cells.

In evaluating [Plaintiff]'s subjective complaints of pain and pulmonary complaints under the factors at 20 C.F.R. 404.1529 and Social Security Ruling 96-7p, the undersigned notes that the [Plaintiff]'s treatment has been conservative in nature and not the type one would expect from a disabling condition; the record does not contain evidence that the [Plaintiff]'s medications caused adverse side

[3]/Deficient supply of blood to an area of the body as a result of obstruction of the inflow of blood.

[4]/A disease marked by attacks of intense pain.

[5]/The essential and distinctive tissue of an organ.

12cv1838

effects that would preclude sustained work activity; and the record does not provide abnormal findings on examination and diagnostic work-up to support his alleged disabling condition. Moreover, despite complaints of fatigue and shortness of breath, he describes an active life that includes an ability to walk his dog, cook dinner, work on his personal website, go grocery shopping two to three times weekly, do household chores including cleaning and vacuuming, drive, and attend doctors appointments. The evidence is inconsistent with limitations that would preclude sustained work activity, and is consistent with an ability to do less than a wide range of light work activity.

Other considerations in evaluating [Plaintiff]'s credibility include the fact that the record reflects clinical findings which revealed the [Plaintiff]'s treatment was effective in stabilizing his pulmonary and low back pain back conditions. The [Plaintiff] was given Metoporol for shortness of breath and reported he felt better. On November 2, 2007, the [Plaintiff]'s lungs were reported to be improved with nebulization therapy. The [Plaintiff] reported on November 13, 2007 that he felt he was having some improvement with his shortness of breath with Prednisone and inhaler therapy. On December 17, 2009, [Plaintiff] reported to DDS that the nebulizer helped him and gives him up to four hours of breathing without his throat closing up. On May 1, 2008 Dr. Sebahar reported that [Plaintiff] had moderate improvement with epidural steroid injections.

In addition, the fact that [Plaintiff] continued to smoke despite having asthma and a medical recommendation that he cease smoking suggest that the symptoms may not have been as serious as has been alleged in connection with this application and appeal. On November 2, 2007, John R. Campbell, P.A., reported that [Plaintiff] was seen for sever shortness of breath and increasing cough and congestion. Despite the [Plaintiff]'s complaints, it was reported that the [Plaintiff] was "still smoking" despite having "clearly worsening lung function." On April 21, 2008, [Plaintiff] reported that he smoked 1/4 to ½ pack of cigarettes a day until two weeks previously. The [Plaintiff] had smoked for six to seven years. On March 21, 2009, Andrew J. Hall, M.D., reported that the [Plaintiff] smelled of

tobacco and the [Plaintiff] reported that he smoked once in a "blue moon." On July 28, 2009, records from the Tri-City Medical Center indicate that the [Plaintiff] resumed smoking two weeks previously when he started to drinking alcohol again. It was reported on August 1, 2009 that the [Plaintiff] was smoking up to a pack of cigarettes a day.

* * * * * * *

Finally ,the record showed that the [Plaintiff] continued his substance abuse during the period of adjudication. On July 28, 2009, records from the Tri-City Medical Center indicate that the [Plaintiff] [sic] a longitudinal summary history of alcoholism that he resumed two weeks previously. It was reported that the [Plaintiff] had been alcohol free for the previous 11 months up until two weeks ago. The [Plaintiff] was discharged on July 31, 2009 with diagnosis that included relapse into alcohol and tobacco use. There is an indication that the [Plaintiff]'s alcohol contributed to his smoking habit and may have exacerbated his asthmatic condition.

As for the opinion evidence, the residual functional capacity assessment is based, in large part, on the testimony of John R. Morse, M.D., the medical expert. Dr. Morse is Board Certified in Internal Medicine and Cardiology. Dr. Morse testified that he had reviewed the entire medical file as outlined above. He gave a detailed longitudinal summary of the [Plaintiff]'s medical history noting the various diagnostic findings, specifically the lumbar spine MRI that showed disc bulging at L4-5, and he found that from the alleged onset date of November 2, 2007 through the date last insured of December 31, 2009, the [Plaintiff] had severe impairments of degenerative disc disease of the lumbar spine, arthritis of the left knee with arthroscopy in May 2009, asthmatic bronchitis, and obstructive sleep apnea. He stated that although there are may be or not be sciatica, the [Plaintiff] had no neurological defects, normal sensory exam, and normal motor strength. Dr. Morse testified that he had no current update on the status of the [Plaintiff]'s left knee condition. He also stated that the [Plaintiff] had a bout of pneumonia in July 2009, but the [Plaintiff] was treated and since then has been on medical supervision and takes medication for his condition. Dr. Morse testified that, based on

his review of the medical evidence of record and the [Plaintiff]'s testimony, the [Plaintiff] does not have any impairment or combination of impairments that meet or equal any of the criteria set forth in the Listing of Impairments in 20 C.F.R., Part 404 Subpart P, Appendix 1, Part A. Based on those records and the [Plaintiff]'s testimony, it was his expert medical opinion that the [Plaintiff] had the ability to lift 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight hour workday, and stand and/or walk six hours in an eight hour workday; and occasionally climb, balance, stoop, kneel, crouch, or crawl, and avoid concentrated exposure to wetness and humidity and all exposure to fumes, odors, dust, gas, and ventilation, and moderate exposure to hazards and heights. Dr. Morse testified that the above noted condition existed from the alleged onset date of November 2, 2007 through the date last insured of December 31, 2009. In addition to the entire medical file, the medical expert based his opinion on Exhibits 12F/3-6; 27F/6 and 7; 30F/8, 9, 10, 34, 38, 39; and 31F/3-7.

The testimony of Dr. Morse is considered persuasive and entitled to considerable weight in reaching a conclusion as to the [Plaintiff]'s residual functional capacity (20 C.F.R. 404.1527, 416.927) because the medical expert is a specialist who is familiar with SSA policy and regulations, he reviewed the complete documentary record, and he provided a detailed explanation with references to the evidence in the record to support his opinion. In addition, it was well-supported by the medical evidence, including the [Plaintiff]'s medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for [Plaintiff]'s chronic symptoms. Moreover, his opinion was not inconsistent with other substantial evidence in the record.

The medical record contains numerous opinions from a state consultative examiner and various state consultants regarding the work-related restrictions imposed by the [Plaintiff]'s impairments. These opinions are described below. The opinions support a residual functional capacity of less than the full range of light work and were therefore given great weight. The reports were well-supported by the medical evidence, including the [Plaintiff]'s medical history and clinical and objective

signs and findings. Moreover, the opinions are not inconsistent with other substantial evidence of record.

On May 12, 2009, state consultative examiner Dr. Sabourin found the [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk up to six hours in an eight hour workday after his knee heal within one year will be able to occasionally climb, stoop, kneel, and crouch.

On May 18, 2009, Pamela Ombres, M.D., a state consultant, reported that she had reviewed the entire record and affirmed Dr. Sabourin's findings in the state consultative examination, dated May 12, 2009.

A *Physical Residual Functional Capacity Assessment*, dated June 18, 2009, by Pamela Ombres, M.D., a state medical consultant, reported that the [Plaintiff] could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk about six hours in an eight hour workday and sit about six hours in an eight hour workday; with pushing and pulling limitations in the left knee; and could occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch and crawl, but never climb ladders, ropes, or scaffolds. The [Plaintiff] was found to need to avoid even moderate exposure to concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc., and hazards (machinery, heights, etc.), and concentrated exposure to wetness and humidity.

On December 17, 2009, J. Ross, M.D., a state consultant, reported that he had reviewed the entire record and affirmed Dr. Ombres' findings in the *Physical Residual Functional Capacity Assessment*, dated June 18, 2009.

On November 30, 2010 Dr. Nielsen found that [Plaintiff] could lift 10 pounds occasionally and 5 pounds frequently; stand 30 minutes at one time; and sit two hours at one time. [Plaintiff] was found unable to tolerate dust, smoke, and fumes. Dr. Nielsen found that [Plaintiff] had the ability to work for two hours per day.

A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence

12cv1838

and consistent with otherwise substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p). However, the undersigned, pursuant to 20 C.F.R. 404.1527 and Social Security Ruling 96-2p, finds no support in the findings reported by Dr. Nielsen. The report primarily summarizes [Plaintiff]'s subjective complaints and diagnoses but does not present objective clinical or laboratory diagnostic findings that support its conclusions. Accordingly, the undersigned gives little evidentiary weight to this opinion which, if otherwise accepted as credible, would indicate that [Plaintiff] could not perform any kind of work.

* * * * * * * *

In sum, the above residual functional capacity assessment is supported by the record, when considered as a whole, and especially in light of the paucity of clinical deficit noted upon physical examinations and diagnostic studies, the relevant conservative treatment during the period of adjudication, the reported improvement with treatment, his lack of reported significant adverse side effects from medications, the analgesic medication history which is inconsistent with claimed severity of pain, and [Plaintiff]'s own description of his daily activities. And the record showed that [Plaintiff] lacked credibility on several issues and it is therefore highly suggestive that [Plaintiff] exaggerated his symptoms, and therefore was not found to be an entirely credible witness. In addition, a medical opinion from the medical expert was found to be fully consistent with the residual functional capacity and was given great weight for the reasons cited above. The evidence is inconsistent with limitations that would preclude sustained work activity, and is consistent with an ability to do less than a wide range of light work activity.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 C.F.R. 404.1565).

* * * * * * * *

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the

national economy that [Plaintiff] could have performed (20 C.F.R. 404.1569 and 404.1569(a)).

11. [Plaintiff] was not under disability, as defined in the Social Security Act, at any time from November 2, 2007, the alleged onset date, through December 31, 2009, the date last insured (20 C.F.R. 404.1520(g)). (TR. 15-27).

V

STANDARD OF REVIEW

On review, a district court may only disturb the Commissioner's final decision "if it is based on legal error or if the fact findings are not supported by substantial evidence." Spraque v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987); see Villa v. Heckler, 797 F.2d 794, 796 (9th Cir. 1986). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). A reviewing court's role is not to determine whether the record can support the Plaintiff's alternative view of the evidence, but whether substantial evidence support's the ALJ's conclusion. Burch v. Barnhart, 400 F.3d 676, 679 ( 9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The court cannot affirm the Commissioner's final decision based upon an isolated amount of supporting evidence. Rather, the court must examine the admin-istrative record as a whole. Gonzalez v. Sullivan, 914

12cv1838

1   F.2d 1197, 1200 (9th Cir. 1990). Furthermore, the court

2   must set aside the Commissioner's decision, even if

3   substantial evidence supports the decision, if the

4   Commissioner applied improper legal standards to reach the

5   decision. *See*, *e.g.*, <u>Benitez v. Califano</u>, 573 F.2d 653,

6   655 (9th Cir. 1978).

VI

SUMMARY OF APPLICABLE LAW

A. Social Security Act and Disability Determination

10   The Act provides for the payment of insurance

11   benefits to persons who contributed to the program and who

12   suffer from physical or mental disability. 42 U.S.C. §

13   423(a)(1)(D). The Act defines "disability" as the

14   "inability to engage in any substantial gainful activity

15   by reason of any medically determinable physical or mental

16   impairment which can be expected to last for a continuous

17   period of not less than 12 months..." <u>Id.</u> An

18   Administrative Law Judge ("ALJ") will review an initial

19   disability determination at an administrative hearing. 20

20   C.F.R. § 404.929 (2013).

21   The Secretary of the Social Security Administration

22   established a five-step sequential evaluation process for

23   an ALJ at a hearing to determine whether the claimant

24   qualifies as disabled. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920

25   (2013). The ALJ will address the following five steps to

26   determine if a person is disabled: first, whether the

27   claimant is engaged in substantial gainful activity;

28   second, whether the claimant has a medically severe

12cv1838

1   impairment or combination of impairments; third, whether
2   the claimant has a severe impairment that is equivalent to
3   a listed impairment that precludes substantial gainful
4   activity; fourth, whether the claimant may perform work he
5   performed in the past despite a severe impairment; fifth,
6   whether the claimant is able to perform other work in the
7   national economy in view of his age, education, and work
8   experience. 20 C.F.R. § 404.1520(a)(2013).

9           B. ALJ Determination of Residual Functional Capacity
10          Prior to step four, the ALJ must determine the
11  claimant's residual functional capacity "to do physical
12  and mental work activities on a sustained basis despite
13  limitations from his impairments." See 20 C.F.R. §
14  404.1520. The ALJ must assess all of the "relevant medical
15  and other evidence" and consider "all of the claimant's
16  impairments, including impairments that are not severe,"
17  to determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e),
18  404.1545(a)(3). Amongst all of the relevant evidence, the
19  Social Security Administration favors the opinion of
20  treating physicians and the ALJ may determine that the
21  treating physician's opinion controls the disability
22  determination or credit the opinion with significant
23  weight. See 20 C.F.R. § 404.1527(c) (2012).

24          The ALJ should find that the treating physician's
25  opinion controls the disability determination if
26  "medically accepted clinical and laboratory diagnostic
27  techniques" support the opinion and the opinion
28  corresponds with other substantial evidence in the case

12cv1838

record. 20 C.F.R. § 404.1527(d)(2)(2012).[6] However, if the ALJ decides that the treating physician's opinion does not control the disability determination, then the ALJ considers specified factors to determine the weight of the opinion. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). The specified factors include the examining relationship, treatment relationship, length of treatment, supportability, consistency, and specialization. See 20 C.F.R. § 404.1527(d) (2012). The ALJ also utilizes the specified factors to determine credibility and resolve conflicts between multiple medical opinions and evidence in the record. 20 C.F.R. § 404.1527(d)(2). Benton v. Barnhart, 331 81 F.3d 821, 831 (citing Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)); Orn, 495 F.3d at 631.

When presented with multiple medical opinions, an ALJ should generally afford more weight to the opinion of a treating physician than to the opinion of non-treating physicians. 20 C.F.R. § 404.1527(c)(2)(2012); Benton, 331 F.3d at 1036 [citing Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)]. Frequently, an ALJ should credit the treating physician's opinion with the greatest weight even though the ALJ determined that the opinion should not control the disability determination. S.S.R. 96-2P. Although a treating physician's opinion is entitled to deference, the ALJ may reject the treating physician's opinion in favor of another physician's opinion if the

---

[6] It is not necessary for Plaintiff to contest the ALJ's finding that Dr. Nielsen's opinion was not entitled to controlling weight. Here, Plaintiff only appeals the ALJ's rejection of Dr. Nielsen's opinion.

1  evidence   in   the   record   supports   the   alternative

2  conclusion. <u>See</u> <u>Orn</u>, 495 F.3d at 632.

3      An ALJ must "provid[e] 'specific and legitimate

4  reasons' supported by substantial evidence in the record"

5  in order to reject a treating physician's opinion in favor

6  of another doctor's opinion. <u>Benton</u>, 331 F.3d at 1036. An

7  ALJ establishes "specific and legitimate" reasons when the

8  ALJ "sets out a detailed and thorough summary of the facts

9  and   conflicting   clinical   evidence,   stating   his

10 interpretation thereof, and making findings." <u>Magallanes</u>

11 <u>v. Bowen</u>, 881 F.2d 747, 751 (citing <u>Cotton v. Bowen</u>, 799

12 F.2d 1403, 1408). The ALJ must not only offer his

13 conclusions, he must also explain why his interpretations

14 are correct. <u>Orn</u>, 495 F.3d at 631 (citing <u>Embrey v. Bowen</u>,

15 849 F.2d 418, 421-422 (9th Cir. 1988)). The ALJ properly

16 rejects the opinion of a treating physician and resolves

17 the conflicts in the record when he sufficiently explains

18 why his interpretations are correct. <u>See</u> <u>id.</u>

19      C. Remedy

20      If the district court finds error with the ALJ's

21 determination, the court may remand the case to the Social

22 Security   Administration   to   award   benefits   or   for

23 additional evidence and findings. <u>Swenson v. Sullivan</u>, 876

24 F.2d 683, 689 (9th Cir. 1989). Courts typically remand for

25 an award of benefits "where (1) the ALJ has failed to

26 provide legally sufficient reasons for rejecting such

27 evidence, (2) there are no outstanding issues that must be

28 resolved before a determination of disability can be made,

and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996); see also Harmon v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000).   The court should award benefits if the ALJ fully developed the record and another "administrative proceeding would serve no useful purpose." See Smolen, 80 F.3d at 1292.

In contrast, the district court should remand the case for additional evidence and findings "where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all of the evidence were properly evaluated, remand is appropriate." Harman, 211 F.3d at 1179-81. Furthermore, the court should remand a case if additional proceedings can remedy defects in the original administrative proceedings. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(citing Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). Essentially, "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179 (citing Lewin, 654 F.2d at 635).

12cv1838

VII

<u>DISCUSSION</u>

<u>A. The ALJ Provided Specific And Legitimate Reasons
Supported by Substantial Evidence For Discounting
The Opinion of Plaintiff's Treating Physician</u>

The ALJ provided "specific and legitimate" reasons for rejecting the opinion of Dr. Nielsen, Plaintiff's treating physician, because the ALJ accurately and thoroughly discussed the entire medical record and substantial evidence supports his findings. The ALJ must set forth "specific and legitimate reasons supported by substantial evidence in the record" to reject the opinion of a treating physician. <u>Benton</u>, 331 F.3d at 1036. "Specific and legitimate" reasons are more than the ALJ's conclusions, he must state the conflicts in the record and his interpretation thereof. <u>See</u> <u>Orn</u>, 495 F.3d at 631.

Here, the ALJ thoroughly stated the conflicts between the opinions and residual functional capacity assessments of multiple doctors in the record. The ALJ detailed the opinions and RFC determinations of Dr Morse, Dr. Sabourin, Dr. Ombres, Dr. Ross, and Dr. Nielson (Tr. 23 - 25). Furthermore, the ALJ adequately interpreted the record, stating that Dr. Morse:

> Reviewed the complete documentary record, and he provided a detailed explanation with references to the evidence in the record to support his opinion. In addition, it was well-supported by the medical evidence, including the [Plaintiff]'s medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for [Plaintiff]'s chronic symptoms (Tr. 23).

Furthermore, the ALJ presented the history of the treating relationship between Dr. Nielsen and Plaintiff, including references to multiple visits and Dr. Nielsen's remarks about those visits. The ALJ then found that there is "no support in the findings reported by Dr. Nielsen. The report primarily summarizes the [Plaintiff]'s subjective complaints and diagnoses but does not present objective clinical or laboratory diagnostic findings that support its conclusion (Tr. 25)." The ALJ detailed the conflicting evidence, discussed his interpretations, and, thus, provided "sufficient and legitimate reasons" for rejecting the opinion of Dr. Nielsen in favor of the RFC determinations of other physicians.

Furthermore, the court may only disturb the Commissioner's final decision "if the fact findings are not supported by substantial evidence." Sprague, 812 F.2d at 1229. Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Matthews, 10 F.3d at 679. Even when more than one rational interpretation explains the evidence, so long as a rational interpretation supports the Commissioner's decision, the court should affirm the Commissioner's decision. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

Here, substantial evidence supports the ALJ's finding that "objective clinical or laboratory diagnostic findings" did not support Dr. Nielsen's RFC assessment. The exams conducted by Dr. Nielsen showed mostly normal

results, abnormal results were inconsistent and controlled with treatment, and the record includes many remarks from Dr. Nielsen stating "good exchange" (Tr. 735, 736, 738, 739, 740, 741). While Plaintiff cites one pulmonary functioning test that showed "moderate obstructive airway disease," substantial evidence in the record still supports the ALJ's overall finding that the "objective clinical or laboratory diagnostic findings" did not support Dr. Nielsen's restrictive RFC assessment (Tr. 922). In this case, the repeat normal findings during Dr. Nielsen's exams, successful symptom relief with treatment, and recitation of Plaintiff's subjective complaints reasonably, rationally, and adequately support the ALJ's finding that objective evidence did not support Dr. Nielsen's limited RFC analysis (Tr. 735, 736, 738, 739, 740, 741, 745, 750,751).

VIII

CONCLUSIONS AND RECOMMENDATION

After a review of the record in this matter, the undersigned Magistrate Judge RECOMMENDS that the Plaintiff's Motion for Summary Judgment be DENIED and the Defendant's Cross Motion for Summary Judgment be GRANTED.

This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provision of 28 U.S.C. § 636(b)(1)

IT IS ORDERED that no later than **May 24, 2013**, any party to this action may file written objectives with the

12cv1838

Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the court and served on all parties no later than **June 7, 2013**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 30, 2013

_____
Hon. William V. Gallo
U.S. Magistrate Judge

12cv1838