UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MARCOTTE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO. 3:12-cv-01838-AJB-WVG<br><br>**ORDER:**<br><br>**(1) OVERRULING PLAINTIFF'S OBJECTION TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE;**<br><br>**(2) ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE;**<br><br>**(3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND**<br><br>**(4) GRANTING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 23, 19, 13, and 15, respectively] |

On April 30, 2013, United States Magistrate Judge Gallo filed a Report and Recommendation ("R&R") addressing the parties' motions for summary judgment. (Doc. No. 19.) Based on his findings and conclusions, the Magistrate Judge recommended that the Court deny Plaintiff's motion for summary judgment and grant Defen-

1

dant's cross-motion for summary judgment. (Doc. Nos. 13, 15.) Magistrate Judge Gallo found that the Administrative Law Judge's ("ALJ's") written opinion, which formed the basis for the Commissioner's ultimate denial of Plaintiff's claim, was supported by substantial evidence. (Doc. No. 19 at 21-22.) On June 6, 2013, Plaintiff Steven Marcotte filed an objection to the R&R. (Doc. No. 22.) On July 8, 2013, Defendant filed a response in opposition to Plaintiff's objection. (Doc. No. 23.)

This Court has reviewed: the applicable law; the administrative record ("AR"); the parties' motions and responses, (Doc. Nos. 13, 15, 16, 17); the Magistrate Judge's 23-page R&R, (Doc. No. 19); Plaintiff's Objection to the R&R, (Doc. No. 22); and the Commissioner's Response to Plaintiff's Objection, (Doc. No. 23). For the following reasons, the Court overrules Plaintiff's objection, adopts Judge Gallo's R&R as opinion of this Court, denies Plaintiff's motion for summary judgment, and grants Defendant's cross-motion for summary judgment.

## BACKGROUND

On December 2, 2008, Plaintiff applied for Disability Insurance Benefits pursuant to Title II and Part A of Title XVIII of the Social Security Act. (Doc. No. 11, Administrative Record "AR" 160.) Plaintiff claimed to have been disabled since November 2, 2007. (*Id.*) The state agency that makes disability decisions for the Commissioner denied Plaintiff's application initially and on reconsideration, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). (AR 89-93, 95-99, 102.) On December 17, 2010, Plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. (AR 15.)

On January 4, 2011, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-27.) In reaching this decision, the ALJ made a series of specific findings.[1] The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 2, 2007 through the date last insured of December 31, 2009. (AR 17.)

---

[1] For the entirety of the ALJ's findings, see AR 2-15.

After considering the entire record, the ALJ found Plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b), except with the ability to occasionally climb, balance, stoop, crouch, kneel, or crawl. (AR 19.) In addition, the Plaintiff must avoid concentrated exposure to wetness and humidity, moderate exposure to hazards, and all exposure to fumes, odors, dust, and gases. (*Id.*) Notably, the ALJ assigned the treating physician's opinion little evidentiary weight because it was not supported by objective medical evidence and primarily summarized the Plaintiff's subjective complaints. (AR 25.) Ultimately, the ALJ determined that there was a significant numbers of jobs in the national economy that Plaintiff could have performed based on the testimony of a vocational expert and considering the Plaintiff's age, education, work experience, and residual functional capacity. (AR 26-27.) Thus, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 2, 2007, the alleged onset date, through December 31, 2009, the last date insured." (AR 27.)

On January 13, 2011, Plaintiff requested review by the Appeals Council. (AR 10-11.) On April 26, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision a final decision subject to judicial review. (AR 1-3.) *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

On July 25, 2012, Plaintiff filed a complaint pursuant to section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), requesting judicial review of the ALJ's decision. (Doc. No. 1.) On January 4, 2013, Plaintiff subsequently filed a motion for summary judgment. (Doc. No. 13.) On February 14, 2013, Defendant filed a cross-motion for summary judgment and a response in opposition to Plaintiff's motion. (Doc. Nos. 15, 16.) On March 6, 2013, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. (Doc. No. 17.)

On April 30, 2013, Magistrate Judge William V. Gallo issued a R&R in which he recommended that the Court deny Plaintiff's motion for summary judgment and grant

Defendant's cross-motion for summary judgment. (Doc. No. 19 at 2.) The Magistrate Judge determined that the ALJ provided sufficiently specific and legitimate reasons supported by substantial evidence to properly discount the opinion of Plaintiff's treating physician, Dr. Nielsen. (*Id.* at 20.) On June 24, 2013, Plaintiff filed an objection to the R&R. (Doc. No. 22.) On July 8, 2013, Defendant filed a response to Plaintiff's objection. (Doc. No. 23.)

## DISCUSSION

### I.  Legal Standards

#### A.  Standard of Review for Social Security Determinations

Unsuccessful applicants for Social Security benefits may seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). Upon review, the Commissioner's decision must be affirmed if it was supported by substantial evidence and based on proper legal standards. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla" but less than a preponderance and must be "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Courts must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Id.*; *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). "Where evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." *Mayes v. Massanar*, 276 F.3d 453, 459 (9th Cir. 2001).

The opinions of treating physicians are generally entitled to greater weight than the opinions of examining or non-examining physicians. *See* 20 C.F.R. § 404.1502; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, an ALJ may give less weight to a treating physician's opinion that conflicts with medical evidence if the ALJ provides "specific and legiti-

mate" reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). A treating physician's opinion may also be assigned less weight if it is inconsistent with other substantial evidence in the record or is not well-supported by medically accepted clinical and laboratory diagnostic techniques. *Orn*, 495 F.3d at 631-32. The ALJ may satisfy the requirement of providing specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). The ALJ must not only offer his own conclusions, he must also explain why his interpretations are correct. *Orn*, 495 F.3d at 631 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

If the opinion is assigned less weight, the ALJ must weigh the opinion using the factors listed in 20 C.F.R. § 404.1527(c). *Id.* at 632. The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the attention of the ALJ which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6); *see Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

**B.     Standard of Review for the Magistrate Judge's R&R**

A district judge must "make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989). The district judge "may accept, reject, or modify, in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

//
//

## II. Analysis

Plaintiff makes only one objection to the R&R. Plaintiff contends that Magistrate Judge Gallo misconstrued the ALJ's rationale in rejecting Dr. Nielsen's opinions. (Doc. No. 22 at 3.) Rather, Plaintiff contends the ALJ's decision discounted Dr. Nielsen's opinion solely because it was primarily based on Plaintiff's self-reported subjective symptoms. (*Id.*) Plaintiff objects to the ALJ's determination that Dr. Nielsen failed to present objective clinical or laboratory diagnostic findings that support his conclusions; Plaintiff emphasizes that Dr. Nielsen performed a pulmonary functioning test, reviewed results of a chest x-ray, and relied on abnormal clinical findings when making his medical conclusions. (Doc. No. 22 at 4.) Thus, the ALJ improperly disregard his finding as being based on subjective evidence and the Magistrate Judge was wrong in finding otherwise.

In response, Defendant argues that the ALJ's decision properly discounted Dr. Nielsen's opinion because other objective medical evidence in the AR contradicted Dr. Nielsen's conclusions which were primarily based on Plaintiff's subjective complaints. (Doc. No. 23 at 1.)

### A. Dr. Nielsen's Findings and Conclusions As Considered by the ALJ

In his decision, the ALJ assigned Dr. Nielsen's opinion "little evidentiary weight" because it "primarily summarizes the claimant's subjective complaints and diagnoses but does not present objective clinical or laboratory diagnostic findings that support its conclusions." (AR 25.) In the decision, the ALJ described findings from Dr. Nielsen in four separate instances: the ALJ noted that (1) on April 21, 2008, Dr. Nielsen reported "the claimant has vital signs within normal limits and normal . . . examinations," (AR 20); (2) on January 13, 2009, Dr. Nielsen reported "the claimant's chest was clear and had 'good eye contact; exchange,'" (*Id.*); (3) "[o]ther examinations completed by Dr.

Nielsen were unremarkable with reported wheezing but generally clear exchange[,]" (AR 21)[2]; and (4) on November 20, 2010, Dr. Nielsen ultimately concluded:

> The claimant could lift 10 pounds occasionally and 5 pounds infrequently; stand 30 minutes at one time; and sit two hours at one time. The claimant was found unable to tolerate dust, smoke, and fumes. Dr. Nielsen found the claimant had the ability to work two hours per day. (AR 25.)

After reviewing the reports and objective medical evidence, the ALJ concluded that Dr. Nielsen's testimony, that Plaintiff could only work up to two hours per day, was unsupported by objective medical evidence.

### B.     Objective Evidence for Dr. Nielsen's Ultimate Conclusion

Plaintiff argues that the ALJ's conclusion lacks merit because Dr. Nielsen "did rely on results of objective tests such as the pulmonary functioning test, reviewed results of chest x-ray [*sic*], and also did rely on abnormal clinical findings such as diffuse wheezing." (Doc. No. 22 at 4.)  The Plaintiff misinterprets the ALJ's rationale.  The ALJ did not conclude there are no objective tests; rather, he found there were no objective tests that supported Dr. Nielsen's finding.  (AR 25.)  The ALJ specifically mentioned the lack of support in his decision:

> A treating physician's medical opinion, on the issue of the nature and severity of an impairment, is entitled to special significance; and, when supported by objective medical evidence and consistent with otherwise substantial evidence of record, entitled to controlling weight (Social Security Ruling 96-2p). However, the undersigned, pursuant to 20 CFR § 404.1527 and Social Security Ruling 96-2p, finds no support in the findings reported by Dr. Nielsen. The report primarily summarizes the claimant's subjective complaints and diagnoses but does not present objective clinical or laboratory diagnostic findings that support its conclusions. Accordingly, the undersigned gives little evidentiary weight to this opinion[.]

---

[2] Specifically, the examinations the ALJ referred to were: (1) Dr. Nielsen's notes from September 17, 2008, noting Plaintiff had "diffuse wheezing," (AR 449); (2) Dr. Nielsen's notes from October 22, 2008, noting Plaintiff had "some wheezes but improved exchange," (AR 448); (3) Dr. Nielsen's notes from November 4, 2008, noting Plaintiff was "wheezy but good exchange," (AR 447); and (4) Dr. Nielsen's notes from December 3, 2008, reporting Plaintiff still had "some wheezing," (AR 446).

(AR 25.) Upon review of the record, the Court agrees with the ALJ's assessment that the objective tests Dr. Neilsen relied upon do not support his ultimate conclusion.

First, Plaintiff contends Dr. Nielsen performed a pulmonary functioning test to support his conclusion. (Doc. No. 22 at 4.)[3] Dr. Nielsen performed a pulmonary report on May 16, 2008. (AR 457.) The test showed a "normal total lung capacity with a low-normal residual volume." (*Id.*) Dr. Nielsen concluded the study most likely showed "mild obstructive airflow limitation" that seemed reversible. (*Id.*) Because the test did not show serious limitations, the ALJ properly determined that it did not support Dr. Nielsen's conclusion that Plaintiff could only work two hours each day. (AR 25.)

Second, Plaintiff contends Dr. Nielsen reviewed results of chest x-rays to support his conclusion. (Doc. No. 22 at 4.) On May 24, 2008, and September 19, 2008, Dr. Nielsen ordered chest x-rays. (AR 780-82.) The chest x-rays from both dates revealed no sign of irregularity and showed Plaintiff's heart was normal. (*Id.*) Because the chest x-rays did not show any limitations, the ALJ properly determined that they did not support Dr. Nielsen's conclusion that Plaintiff could only work two hours each day. (AR 25.)

Third, Plaintiff contends Dr. Nielsen relied on "abnormal clinical findings such as diffuse wheezing in the calculus of what he believed were Steven Marcotte's functional limitations. [*sic*]" (Doc. No. 22 at 4.) The ALJ specifically mentions Dr. Nielsen's examination showing wheezing. (AR 21.) However, Dr. Nielsen's examinations also revealed that Plaintiff "feels better," had a "clear and good exchange," "wheezy but good

---

[3]Plaintiff does not specify where the pulmonary functioning test is located in the record. (Doc. No. 22 at 4.) Plaintiff may be referring to a notation from Dr. Nielsen's answer on the Physical Residual Functional Capacity Questionnaire. (AR 922-26.) Question #6 in the Questionnaire requires Dr. Nielsen to "Identify the clinical findings and objective signs[.]" (AR 922.) In relevant part, Dr. Nielsen wrote "PFT done 11/2010 . . . Moderate DAD=reversibility[.]" (*Id.*) The Court is unable to find a pulmonary functioning test in the Record from November 2010. The Court may only consider evidence in the Record. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006).

exchange," and has only a "few scattered wheezes."[4] (AR 445, 447, 735.) Dr. Nielsen's notes also show that the wheezing improved with treatment.[5] In his final report, Dr. Nielsen failed to explain how wheezing could so severely limit Plaintiff's ability to work to only two hours each day. (AR 928.) Because there was substantial objective evidence in Dr. Nielsen's reports that could rationally be interpreted to show Plaintiff's condition did not limit him to only working just two hours per day, the Court must uphold the ALJ's interpretation. *See Mayes*, 276 F.3d at 459. Therefore, the ALJ properly determined that the evidence of wheezing did not support Dr. Nielsen's conclusion that Plaintiff could only work two hours each day. (AR 25.)

Accordingly, as Dr. Nielsen's ultimate conclusion was unsupported by objective evidence, the ALJ properly determined Dr. Nielsen's opinion was not entitled to controlling weight. *See Orn*, 495 F.3d at 631-32; *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004). Furthermore, the ALJ properly rejected Dr. Nielsen's opinion with "sufficient and legitimate reasons" because he specifically

---

[4] In addition, some of the other objective medical evidence in the Record conflicts with Dr. Nielsen's findings of severe wheezing. On April 14, 2008, Dr. Nolan found Plaintiff had no wheezing. (AR 462.) On June 23, 2008, Dr. Nolan again found Plaintiff had no wheezing. (AR 792.) On November 25, 2008, Dr. Ziering did not note any wheezing. (AR 587.) Also, Dr. Morse, Dr. Sabourin, Dr. Ombres, and Dr. Ross each reviewed Plaintiff's entire medical record and did not arrive at Dr. Nielsen's ultimate conclusion that Plaintiff could only work two hours each day. (AR 23-25.)

[5] Specifically, on May 28, 2008, Plaintiff's "[s]ymptoms are better." (AR 450.) On October 22, 2008, Plaintiff's wheezing had an "improved exchange[.]" (AR 448.) On January 13, 2009, Plaintiff "feels better!" (AR 445.) On August 26, 2009, Plaintiff had "some [wheezing] but better." (AR 739.) On March 24, 2010, Plaintiff "seems improved." (AR 735.) The Record also shows treatment effectively stabilized Plaintiff's pulmonary condition. (AR 22.) The ALJ accurately summarized:
> [Plaintiff] was given Metoporol for shortness of breath and reported he felt better. On November 2, 2007, [Plaintiff] were reported to be improved with nebulization therapy. [Plaintiff] reported on November 13, 2007 that he felt he was having some improvement with his shortness of breath with Prednisone and inhaler therapy. On December 17, 2009, [Plaintiff] reported to DDS that the nebulizer helped him and gave him up to four hours of breathing without his throat closing up.

(*Id.*) (citations removed).

1 addressed the lack of objective clinical or laboratory diagnostic findings to support the
2 conclusion that the Plaintiff could only work two hours per day. (AR 25.) *Matney v.*
3 *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Ultimately, after comparing Dr. Nielsen's
4 objective medical evidence and findings to the rest of the record, the ALJ properly found
5 that Dr. Nielsen's ultimate conclusion, that Plaintiff could only work two hours each day,
6 was unsupported by the objective medical evidence Dr. Neilsen provided or by the rest
7 of the objective medical evidence in the record. (AR 25.) The Magistrate Judge did not
8 misconstrue these findings when he concluded "the ALJ provided specific and legitimate
9 reasons supported by substantial evidence for discounting the opinion of [Dr. Nielsen]."
10 (Doc. No. 19 at 20.)

11 After reviewing *de novo* those portions of the R&R to which Plaintiff objected, the
12 Court finds the Magistrate Judge correctly evaluated the facts and applied the controlling
13 law in this case.[6] Moreover, after independently reviewing the entirety of the R&R and
14 the ALJ's decision in light of the AR, the Court finds Judge Gallo's R&R thorough and
15 well-reasoned.

16 //
17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //

---

[6] For the portions of the R&R to which there was no objection, the court is not required to review the magistrate judge's findings and recommendations. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

## **CONCLUSION**

Based on the record, the ALJ properly assigned little evidentiary weight to Dr. Nielsen's opinion. Additionally, the ALJ based that decision on proper legal standards. The Magistrate Judge properly reviewed the ALJ's decision. Accordingly, the Court overrules Plaintiff's objection to the Report and Recommendation of the Magistrate Judge; adopts the Report and Recommendation of the Magistrate Judge; denies Plaintiff's motion for summary judgment; and grants Defendant's cross-motion for summary judgement. The clerk is directed to enter judgment for the Defendant and to close this case.

**IT IS SO ORDERED**.

DATED: September 16, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge